UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY and NORTH AMERICAN CAPACITY INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>v.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>        Defendant. | 2:10-cv-01859-ECR-RJJ<br><br>**ORDER**<br><br>Defendant's Motion to Disqualify Plaintiffs' Counsel (#9) |

This matter comes before the Court for a hearing on Defendant's Motion to Disqualify Plaintiffs' Counsel, Gena Sluga, and the Nevada and Arizona firms (#9). The Court also considered Plaintiffs' Response (#16), as well as the evidence and arguments presented at the hearing. The Court held a hearing on the motion and took it under submission.

## BACKGROUND

Before the instant case was initiated, Sluga was employed by Harper, Christian, Dichter, & Sluga (the "Arizona Office") in Arizona. The Arizona Office was affiliated with Christian, Kravitz, Dichter & Johnson (the "Nevada Office") in Nevada. Although both firms are separate businesses, they both employed many of the same partners and associates. Practically speaking, the firms actually were a single firm (the "Harper Christian Firm") operating in two different states.

Before the present litigation commenced, from 2007 through October of 2009, Sluga and Kevin Barrett were partners at the Harper Christian Firm. During this time, Barrett was lead

counsel for National Fire & Marine Insurance Company (National Fire) in the currently pending case of *McClain v. Nat'l Fire & Marine Ins. Co.*, No. 2:05-cv-00706-LRH-RJJ (D. Nev. filed Jun. 25, 2005). During the course of the *McClain* litigation, McClain accused National Fire of failing to defend and indemnify him in several insurance claims regarding defective swimming pool construction.

During this prior litigation, Barrett enlisted Sluga's assistance because of her experience with Nevada insurance claims. Sluga acted in an associate capacity in the *McClain* case and billed National Fire for 21.1 hours of work over a period of ten days. Despite the limited number of hours Sluga worked on *McClain*, she played a key role in drafting a consolidated brief that addressed National Fire's reply in support of its own motion for summary judgment and its response to McClain's motion for summary judgment. In addition to drafting a portion of the brief, Sluga and Barrett also discussed two insurance forms key to National Fire's defense: M-5076 and M-5077. Exhibits 2-10 Attached to Defendant's Motion (#9). They also discussed arguments related to National Fire's duties to defend and indemnify its clients. Additionally, Sluga and Barrett had a conversation about potential trial strategy and motions in limine. Sluga's name appears on the caption pages of eight separate documents filed in the *McClain* case between February and October 2008. Sluga did not have any direct contact with any National Fire representatives, and her involvement in the case was limited to assignments she received from Barrett.

In October 2009, Barrett left the Harper Christian Firm, and he continued to represent National Fire. The Harper Christian Firm, including Sluga, did not work on the *McClain* case after Barrett left the firm.

In the instant case, Sluga is now representing the Plaintiff, North American. North American and National Fire were both insurers of four different contractors and one roofing subcontractor. The insurance policies for the contractors are at issue in this case. North American claims that National Fire did not defend or indemnify each of the five insured contractors. North American seeks to recover some of the costs from National Fire that it spent defending and indemnifying the contractors. National Fire claims that the same insurance forms and policies at

issue in the previous *McClain* litigation will be at issue in the present case, and, therefore, Sluga should be disqualified from representing North American.

## DISCUSSION

Local Rule IA 10-7(a) states that attorneys "shall adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." LR IA 10-7(a). Therefore, this court will apply NEV. R. PROF'L. CONDUCT 1.9(a) and 1.10(a). *Arteaga v. Hutchins Drywall*, 2011 U.S. Dist. LEXIS 8668 at *3, 2011 WL 219918 at *1 (D. Nev. 2009) (noting that "[f]ederal courts apply state law in determining matters of attorney disqualification" (citing *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000)).

Defendant argues that Sluga, the Arizona Office, and the Nevada Office, should be disqualified pursuant to Rule 1.9(a), Duties to Former Clients, and Rule 1.10(a), Imputation of Conflicts of Interests.

Rule 1.9(a) states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 1.10(a) states:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

**I.   Application of Rule 1.9(a)**

Sluga will be disqualified from representing National Fire in the present case because she is in violation of Rule 1.9(a). In matters regarding disqualification, the party seeking disqualification bears the burden of proof. *Robbins v. Gillock*, 862 P.2d 1195, 1197 (Nev. 1993). In order for an attorney to be disqualified under Rule 1.9(a), the party seeking disqualification must establish three elements: (1) that an attorney-client relationship existed between the lawyer

and his or her former client; (2) that the former matter and current matter are substantially related; (3) and that the current representation by the lawyer is adverse to the lawyer's former client. *Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Court of Nev.*, 152 P.3d 737, 741 (Nev. 2007).

### A.  Existence of an Attorney-Client Relationship

There is no doubt that an attorney-client relationship existed between Sluga and National Fire. National Fire hired Sluga's firm to represent it in the *McClain* case. As part of that representation, Sluga billed National Fire for 21.1 hours of work and helped draft dispositive briefs on behalf of National Fire. Although Sluga was not the lead attorney in the *McClain* case, she still had an attorney-client relationship with National Fire as part of the firm hired to represent National Fire. *See Truesdell v. Donat*, 2010 U.S. Dist. LEXIS 110717 at *7, 2010 WL 3938361 at *3 (D. Nev. Oct. 4, 2010) (holding that an attorney-client relationship exists when a client hires an attorney to represent him or her).

### B.  *McClain* and the Instant Case are Substantially Related

*McClain* and the case at bar are substantially related. The Nevada Supreme Court ruled that "[m]ere similarity or a superficial resemblance between prior and present representation is insufficient to justify disqualification." *Robbins*, 862 P.2d at 1197. Instead, the focus "should be on the precise nature of the relationship between the present and former representation." *Id.* In order for this Court to come to a conclusion that two cases are substantially related and that counsel should be disqualified based on a former representation, it must:

(1) make a factual determination concerning the scope of the former representation,

(2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing the client in those matters, and

(3) determine whether that information is relevant to the issues raised in the present litigation.

*Nev. Yellow Cab*, 152 P.3d 737 at 742.

### I. *The Scope of Sluga's Former Representation*

Although Barrett was the lead attorney in *McClain*, Sluga still played a role in representing National Fire. She billed National Fire for 21.1 hours of work, which included the time she spent drafting part of a consolidated brief that addressed National Fire's reply in support of its own motion for summary judgment and its response to Plaintiff's motion for summary judgment. In addition to drafting a portion of those dispositive briefs, Sluga and Barrett discussed two insurance forms key to National Fire's defense: M-5076 and M-5077. Exhibits 2-10 Attached to Defendant's Motion (#9). They discussed arguments related to National Fire's duties to defend and indemnify its clients. Furthermore, Sluga also had a conversation with Barrett regarding potential trial strategy and motions in limine. Additionally, Sluga's name appears on the caption pages of eight separate court filings in the *McClain* case between February and October 2008. It is fair to reason that during the time Sluga represented National Fire, she became familiar with National Fire's legal arguments concerning its duty to defend and indemnify its insureds, especially since she assisted with dispositive motion practice.

### ii. *Reasonable Inference that Confidential Information was Given*

It is reasonable to infer that confidential information was given to Sluga while she was working on the *McClain* case. Importantly, the "moving party is not required to divulge the confidences actually communicated . . . The court should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter." *Robbins*, 862 P.2d at 1197. In *Coles v. Arizona Charlie's*, Coles sued Arizona Charlie's on an employment racial discrimination claim. 973 F. Supp. 971, 972 (D. Nev. 1997). Arizona Charlie's moved to disqualify Coles's counsel, Janet Pancoast, because she was a previous employee of Arizona Charlie's' counsel during a lawsuit involving a different racial discrimination claim against Arizona Charlie's. *Arizona Charlie's,* 973 F. Supp. at 972-73. Arizona Charlie's argued that Pancoast was privy to confidential information regarding its employment practices and litigation strategies during her previous employment. *Id.* The Court ruled that it was reasonable to infer that Pancoast was privy to confidential information because it

could have been revealed to all members of the firm during meetings and informal discussions. *Arizona Charlie's,* 973 F. Supp. at 974. Confidential information also could have been revealed during office strategy meetings, which Pancoast attended, regarding Arizona Charlie's employment practices and litigation. *Id.* Consequently, Pancoast was disqualified. *Id.*

It is reasonable to infer that Sluga possesses confidential information relating to National Fire's defense strategies. Just like the disqualified attorney in *Arizona Charlie's* who attended strategy meetings regarding her client's employment practices and litigation, Sluga had meetings with Barrett where it is reasonable to infer that confidential information was shared concerning National Fire's defense strategies. Furthermore, Sluga wrote part of a consolidated brief on behalf of National Fire while she was affiliated with the Harper Christian Firm. Sluga was likely privy to confidential information as she prepared the dispositive motions in the *McClain* case. Additionally, Sluga likely became aware of confidential information when she discussed potential trial strategy and motions in limine with Barrett. Lastly, Sluga billed National Fire for 21.1 hours of work. Considering that the disqualified attorney in *Arizona Charlie's* did not bill her firm's client for any work, the Court finds that the hours Sluga billed support the inference that she could have learned confidential information about National Fire's defense strategies to allegations of failure to defend and indemnify insureds.

It is reasonable to infer that the confidential information Sluga acquired during her dispositive work on the *McClain* case could be harmful to National Fire in the present case. For example, Sluga could have acquired information such as how National Fire handles claims, National Fire's internal defense practices including the arguments it might make in court, what types of cases National Fire might settle, what National Fire's trial strategies are, and how National Fire works with its attorneys. Defendant has presented enough evidence to allow the Court to make a reasonable inference that Sluga received confidential information during the *McClain* case that could be harmful to National Fire in the present matter.

        iii.     *The Confidential Information is Relevant to the Present Litigation*

The confidential information regarding National Fire's defense strategies that Sluga was

privy to while employed at the Harper Christian Firm is relevant to the present case. Both *McClain* and the case at bar deal with accusations that National Fire did not defend and indemnify its insureds. Additionally, insurance forms M-5076 and M-5077, Exhibits 2-10 Attached to Defendant's Motion (#9), and other policies at issue in this case were also at issue in *McClain*. Due to the overlap between the two cases, the information that Sluga was exposed to while employed at the Harper Christian Firm is relevant to National Fire's potential defenses in the present case.

### C.  Sluga's Representation of Plantiffs is Adverse to National Fire

Sluga's representation of Plaintiffs is adverse to National Fire. Not only is Sluga the opposing counsel against a former client, but the information she possesses could be prejudicial and detrimental to National Fire. Consequently, Sluga's representation is clearly adverse to National Fire. *See Truesdell*, U.S. Dist. LEXIS 110717 at *7, 2010 WL 3938361 at *3 (holding that adverse representation exists when an attorney represents a party that is suing a former client).

## II.  Application of Rule 1.10(a)

Since Sluga is disqualified from representing Plaintiffs under Rule 1.9(a), all other attorneys at the Nevada Office and Arizona Office are consequently disqualified from representing Plaintiffs under Rule 1.10(a).  Any argument to the contrary must fail because Sluga "has information protected by Rule ... 1.9(c) that is material to the matter."  NEV. R. PROF'L CONDUCT 1.10(b)(2).

## CONCLUSION

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Defendant's Motion to Disqualify Plaintiffs' Counsel Gena Sluga, the Nevada Office, and the Arizona Office (#9) is **GRANTED**.

DATED this 7th day of September, 2011.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge